UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:17-CR-00351 |
| | ) | |
| Plaintiff-Respondent, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN G. SIMER, II, | ) | OPINION AND ORDER |
| | ) | |
| Defendant-Petitioner. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

On June 23, 2023, the assigned Magistrate Judge issued a Report and Recommendation ("R&R") (ECF #132) recommending that the Court deny a Motion to Vacate Convictions and Sentence filed by the Defendant pursuant to 28 U.S.C. § 2255.  (ECF #99.)  The Magistrate Judge also recommended that the Court decline to issue a certificate of appealability.  (ECF #132)  Defendant filed objections (ECF #133), and the Government filed a Response.  (ECF #134.)

For the reasons that follow, Defendant's objections to the R&R are overruled, the R&R is Accepted and Adopted and the Motion is Denied.

STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *See also Powell v. United States,* 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a Magistrate Judge

1

that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."); Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to."). After review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate Judge with instructions." Fed. R. Civ. P. 72(b)(3).

## Background

The Magistrate Judge succinctly set forth the procedural and factual background of this matter in the R&R and the Court adopts those portions here. However, in brief synopsis, Defendant was found guilty after a jury trial of a number of charges, including Distribution of a Controlled Substance Resulting in Death, Felon in Possession of Firearm and Ammunition, Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Possession of Body Armor by Violent Felon. At trial, evidence of a recorded conversation was presented wherein Defendant stated: (i) he was "addicted to the excitement and danger" of drug dealing, including putting on a "bulletproof vest"; (ii) he felt "proud of [his] reputation" because no one would "try" him; and (iii) he decided "years ago . . . to go all the way, put it all in", which the Court will collectively call the "Lifestyle Statements". The Lifestyle Statements were made by the Defendant during a smoke break after Defendant had undisputedly terminated law enforcement questioning by invoking his right to counsel.

The Lifestyle statements were used by the Government in its opening statement, its case in chief and closing statement. Defendant's trial counsel did not file a motion to exclude or object to the admission of the Lifestyle Statements into evidence. Counsel's failure to exclude or object forms the basis of Defendant's § 2255 motion, which argues Defendant's Sixth

Amendment right to effective assistance of counsel was violated by counsel's failure to challenge the prosecution's use of the Lifestyle Statements.

## ANALYSIS

The Magistrate Judge considered the Motion (ECF #99), the Government's Response in Opposition (ECF #110), Defendant's Reply in Support (ECF #113), evidence elicited at an evidentiary hearing (See Minute Order dated 3/1/23), and post-hearing supplemental briefs. (ECF #128 and 129.) After consideration, the Magistrate Judge concluded that Defendant had not met the standard of *Strickland v. Washington,* 466 U.S. 668, 687 (1984), which requires that Defendant demonstrate (i) counsel's performance was deficient; and (ii) counsel's deficient performance prejudiced his defense. The Magistrate Judge declined to make a definitive finding that counsel's performance was deficient, finding instead that Defendant could not demonstrate prejudice.

The Magistrate Judge's prejudice analysis cited controlling case law for the proposition that Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The Magistrate Judge then examined the admittedly circumstantial evidence against the Defendant in the absence of the Lifestyle Statements: (i) Ferris was in pain the night before meeting with Defendant, (ii) she called Defendant asking him to front her drugs, (iii) she was still in pain later that evening, (iv) the following morning, Ferris sold the wheels to her car, (v) Ferris then went to Defendant's and returned with heroin, (vi) she then told Raynovich she consumed the heroin, commenting that she didn't like it because it was stronger than she was accustomed to; (vii) the next morning, Ferris was found deceased, and (viii) lab reports on Ferris's blood indicated she consumed heroin.

3

Setting aside the Lifestyle Statements, the Magistrate Judge found Defendant could not clear the high bar of demonstrating that counsel's performance "more likely than not altered the outcome of the case" because the other trial evidence was sufficiently strong that the jury could reasonably conclude Defendant was guilty.

Defendant objects to this conclusion, arguing that the Magistrate Judge "improperly imported a sufficiency-of-the evidence standard into the prejudice analysis, and did not correctly frame the disputed evidence's impact on the credibility assessments inherent in the government's circumstantial case." (ECF #133 at 1.) Defendant's objection is not well-taken. While the R&R's language may have been imprecise, the Magistrate Judge engaged in the proper analysis.

*Strickland* instructs that a proper prejudice inquiry requires consideration of "the totality of the evidence before the judge or jury." 466 U.S. at 695. The Sixth Circuit has further elaborated:

> "Surmounting *Strickland's* high bar is never an easy task." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. "The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

*Jones v. Schweitzer,* No. 20-3612, 2022 U.S. App. LEXIS 6369, at *14 (6th Cir. Mar. 9, 2022). The R&R correctly stated, "To show that [counsel's] allegedly deficient performance had a reasonable probability to prejudice his case, [Defendant] must show that her performance had more than a "conceivable effect" on the proceeding's outcome." (ECF #132 at 24, citing *Strickland,* 466 U.S. at 693.)

4

Out of an abundance of caution, despite finding the Magistrate Judge properly applied *Strickland*, the Court has made a de novo examination of the issue and finds that Defendant has not carried his burden of demonstrating a substantial likelihood of a different result.  The totality of the evidence before the jury in the absence of the Lifestyle Statements includes the Raynovich testimony which establishes a temporal proximity between the sale of drugs to Nicky Ferris and her death, as well as other incriminating evidence, creating a significant evidentiary hurdle Defendant cannot overcome to demonstrate a substantial likelihood of a different result.

But Defendant raises a related objection of whether the Lifestyle Statements impacted the credibility of the Raynovich testimony, thus affecting the quality of the evidence.  Defendant frames the trial testimony as questionable because:

> the evidence showed that Ms. Ferris was an opiate addict and abuser who purchased drugs from multiple dealers.  The night before she died, she called a contact named Christian Johnson and texted him asking "Did you get that pill?"  And when her boyfriend Clifford Raynovich, who had used drugs with her the night before and became the prosecution's star witness, discovered her dead he ran across the street to the house a known drug dealer named James Gorsuch.  The police found Raynovich sitting on Gorsuch's porch.  Gorsuch approached the police and conspicuously made statements deflecting their investigation toward Simer.  Raynovich also testified that he and Simer had a longstanding grudge and "mutual dislike."

(ECF #99 at 8, record citations omitted).  The Court recognizes that "[w]here a trial is 'essentially . . . a swearing contest' that turns largely on witness credibility, then the risk of 'harmful inferences' is 'heightened.'  *Taylor v. Kentucky,* 436 U.S. 478, 487-88, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978).  A record presenting dueling versions of events makes the jury's duty to make credibility determinations all the more delicate."  *Beverly v. Macauley,* No. 20-1384, 2022 U.S. App. LEXIS 7697, at *46 (6th Cir. Mar. 22, 2022).

Defendant offers *Hodge v. Hurley,* 426 F.3d 368, 386-87 (6th Cir. 2005), for the proposition that "unconstitutional evidence that bears on credibility determinations in otherwise

5

weak cases lacking physical evidence can establish *Strickland* prejudice." (ECF #133 at 7.) While *Hodge* is similar, it is distinguishable. In *Hodge,* "the result depended primarily on the jury's determination of whether Hodge -- who took the stand in his own defense -- was more or less credible than his ex-girlfriend, Fenn, who testified against him." *Id.* In other words, there were directly competing credibility evaluations in *Hodge* that aren't present in this case.

Defendant's argument amounts to *Hodge* by proxy: presentation of the Lifestyle Statements bolstered Raynovich's credibility by demonizing Defendant. He contends that in the absence of the Lifestyle Statements the quality of the remaining evidence is degraded such that that "there were plenty of holes that a skeptical jury could have viewed as reasonable doubt" and:

> A jury at all sympathetic to Mr. Simer could easily have concluded that the government proved that Ms. Ferris and Mr. Raynovich both took heroin purchased from Mr. Simer, but *did not* prove beyond a reasonable doubt that the additional carfentanil that killed Ms. Ferris came from Mr. Simer. The government enticed the jury to overlook that gap in its case by painting Mr. Simer, with unconstitutionally obtained statements, as a callous and hardened criminal.

(ECF #113 at 18 (emphasis in original).)

The relevant standard is not whether a jury could have reached a different verdict. In fact, that standard is expressly rejected. *Harrington*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable") Rather:

> In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland v. Washington,* 466 U.S. 668, 695-96, 104 S. Ct. 2052, 2069 (1984)

After taking due account of their effect, the Court does not find that it is reasonably likely the decision reached would have been different absent introduction of the Lifestyle Statements. There are numerous statements freely made by the Defendant and presented to the jury from which they could fairly and reliably conclude that the Raynovich testimony was credible and support findings of guilt. Defendant was an admitted drug dealer who understood the risks of cutting drugs and possible death of his customers.

The record is replete with freely made admissions which comport with the content of the Lifestyle Statements. Defendant freely stated when first confronted by law enforcement, "I know what this is about. This is about Nicky dying." He freely stated:

- He bought 5 to 10 grams at a time of "boy" (heroin) and "hard" (crack cocaine) and would cut the drugs;
- He acknowledged that people were dying from the drugs;
- He sold drugs to make money;
- that he knew people were "dropping and shit;"
- that he "feel[s] like shit when one of [his] peoples go or they OD;" and
- He would sell drugs "all night" because he "chase[s] paper";
- he told his companions that he "was happy he didn't grab a gun and throw some rounds down the stairs, because he wasn't too sure who came into the residence."

While the Lifestyle Statements add theatrical flavor, they do not admit a different set of facts. Saying he was "addicted to the excitement and danger" of drug dealing, including putting on a "bulletproof vest", that he was "proud of [his] reputation" because no one would "try" him, and that he decided "years ago . . . to go all the way, put it all in" neither enhances, nor contradicts the factual conclusion that Defendant was a drug dealer who knew immediately that he was being arrested for a drug sale related to the death of Nicky Ferris.

*Strickland* instructs the Court to examine the quality and quantity of the evidence, which includes the freely made statements admitting to dealing drugs, cutting drugs, being aware of Nicky's death and being aware of other overdoses and deaths. Defendant asks the Court to

discount these statements based on the government's use of the Defendant's post-invocation statements. But that is not what *Strickland* instructs.

The Court finds that Defendant has not demonstrated prejudice because Defendant cannot demonstrate a reasonable probability the result of the proceeding would have been different. The freely made statements confirming Defendant's "occupational choice" and risk-taking match the content of the Lifestyle Statements, neutralizing any possible unconstitutional taint.

Defendant argues that the Magistrate Judge should have made a formal recommendation for a finding that counsel's performance was constitutionally deficient on the contention that because Defendant was prejudiced both prongs should have been addressed. That objection is moot as the Court's de novo review reaches the same conclusion as the Magistrate Judge: Defendant was not prejudiced by counsel's failure to object/suppress the Lifestyle Statements. The Court does not need to address both prongs if one is sufficient to dispose of the claim. *Strickland,* 466 U.S. at 697.

The Magistrate Judge recommended that, if the R&R's analysis were adopted, no certificate of appealability should issue from the Court because jurists of reason could not disagree with the Court's resolution of the constitutional claim. Defendant objects to this recommendation on the basis that cases with circumstantial evidence are inherently close cases at the trial level, therefore, any reasonable jurist might find a different result due to that closeness. The Court disagrees. Defendant's statement implies a brightline rule of appealability for any case which relies on circumstantial evidence. The Court is aware of no such rule.[1]

---

[1] In fact, in every criminal trial, the Court instructs the jury that the law makes no distinction between the weight they should give to either direct or circumstantial evidence, or direct that one constitutes better evidence than the other.

8

The Court understands Defendant's perception of seemingly circular reasoning provided in the Report and Recommendation regarding issuance of a certificate of appealability. However, that perception is faulty. To receive a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Implicit in the Magistrate Judge's analysis is the finding that if Defendant cannot demonstrate a substantial likelihood of a different result at trial, he cannot make a substantial showing of the denial of a constitutional right. Accordingly, in this instance, the requirements of *Strickland* and 28 U.S.C. § 2253(c)(2) are congruent such that reasonable jurists could not debate the outcome.

Based on the foregoing, the Court **ADOPTS** the Report and Recommendation and **DENIES** Defendant's Motion to Vacate Convictions and Sentence (ECF #99.)

**IT IS SO ORDERED.**

/s Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: September 22, 2023**